IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| v. | § | Criminal No. **3:23-CR-102-L** |
| | § | |
| **JUAN CARLOS FERRER** | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Juan Carlos Ferrer's ("Defendant" or "Mr. Ferrer") Motion to Dismiss Indictment ("Motion") (Doc. 22), filed on February 18, 2025. Defendant seeks dismissal of Count One of the Indictment, which charges him with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Defendant contends that: (1) § 922(g)(1) exceeds Congress's Commerce Clause power and (2) § 922(g)(1) is unconstitutional on its face and as applied to him. The Government opposes the Motion. After careful review of the Motion, Government's response, and applicable law, the court **denies** Defendant's Motion for the reasons herein explained.

### I.   Background

On March 21, 2023, the Government filed a one-count Indictment (Doc. 1) against Mr. Ferrer that charged him with knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a felony offense, while knowingly possessing a firearm in and affecting interstate and foreign commerce in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).

In November 2011, Defendant pleaded guilty to violating 21 U.S.C. § 846, 21 U.S.C. §§ 814(a)(1), and (b)(1)(B). *United States v. Ferrer*, No. 4:11-CR-096, Doc. No. 459 at 1 (N.D. Tex.). Mr. Ferrer and others planned to steal cocaine and money from individuals who had been

selling cocaine to his Co-defendants. *Id.* at 3. On April 21, 2011, Defendant and Co-defendants entered a warehouse and robbed, at gunpoint, two individuals of cocaine and money. *Id.* Additionally, Mr. Ferrer and his Co-defendants were responsible for several other robberies in which they stole more than $2,000,000. *Ferrer*, No. 4:11-CR-096, Doc. No. 958-1 at 32.

## II.     Legal Standard

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A court may grant a motion to dismiss an indictment if the defect is essentially a question of law. *United States v. Banks*, 339 F.3d 267, 269 (5th Cir. 2003). Motions to dismiss that test the interpretation of a statute are such questions of law that are proper for the court to review. *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) ("The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact . . . . If a question of law is involved, then consideration of the motion is generally proper.") (citation omitted).

Mr. Ferrer contends that § 922(g)(1) is unconstitutional on its face and as applied to him. Litigants are permitted to raise both "as applied" and "facial" challenges, but the "lawfulness of the particular application of the law should ordinarily be decided first." *Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020) (citation omitted). "Once a case is brought," however, "no general categorical line bars a court from making broader pronouncements of invalidity in properly 'as-applied' cases*." Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 331 (2010) (citation omitted).

"As applied" challenges require the court to determine whether the law or act may constitutionally be applied to some and be applied unconstitutionally to others. *Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973). In a facial challenge, a defendant must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Rahimi*, 602 U.S. 680, 693 (2024) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). This challenge is the most difficult to mount successfully. *Id.* To prevail, the Government must establish that the challenged law "imposes a comparable burden on the right of armed self-defense" to that imposed by a historically recognized regulation. *Bruen,* 597 U.S. at 3.

### III. Analysis

Section 922(g)(1) provides:

> It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition [that] has been shipped or transported in interstate or foreign commerce.

The Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court held that the Second Amendment protected an individual's right to keep and bear arms and that a Washington D.C. law that prohibited possession of handguns in the home was unconstitutional. *District of Columbia v. Heller,* 554 U.S. 570 (2008). The Court relied on the text and meaning of the words in the Second Amendment based on history. *Id.* at 593. The Court *did not* call into question prohibitions against persons who are felons or "mentally deficient." *Id.* at 626. Two years following *Heller*, the Court struck down city ordinances that banned handguns and held that the Second Amendment applied to states and was incorporated by the Fourteenth Amendment. *McDonald v. City of Chicago, Illinois*, 561 U.S. 742 (2010).

In June 2022, the Supreme Court struck down New York's concealed carry licensing law because it was an unconstitutional infringement on Second Amendment guarantees. *New York State Rifle & Pistol Ass'n Inc. v. Bruen,* 597 U.S. 1 (2022). The Court created a new framework in *Bruen*. Under this framework, the first step requires courts to look at the text. *Id.* at 24. Second, the court must determine whether the Government has met its burden of "justifying that the regulation is consistent with the Nation's historical tradition of firearm regulation." *Id.* It is only after both prongs are satisfied that a court may conclude that an "individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.*

Applying the framework to the New York law, the Court held that the plain text of the Second Amendment protects carrying handguns publicly for self-defense. *Id.* at 32. For the second prong, the Court held that the State of New York had not met its burden to show that the law was consistent with the Nation's history. *Id.* In support of the historical analysis, New York submitted a "variety of historical sources," which the Court categorized in periods categorized as "(1) medieval to early modern England; (2) the American Colonies and the early Republic; (3) antebellum America; (4) Reconstruction; and (5) the late-19th and early-20th centuries." *Id.* at 34. The Court held that this was necessary because "not all history is created equal." *Id.* After reviewing these "periods," the Court was not convinced that there was a tradition of broadly prohibiting the use of handguns in public.

After applying the new test created by the Court, a panel of the Fifth Circuit initially held that 18 U.S.C. § 922(g)(8) violated the Second Amendment to the Constitution. *United States v. Rahimi*, 61 F.4th 443, 451 (5th Cir. 2023), *rev'd*, 602 U.S. 680 (2024). The panel held that the historical analogues were not relevantly "similar to" § 922(g)(8). *Id.* at 456. The Court reversed the Fifth Circuit and held that the Government had met its burden by showing historical evidence

**Memorandum Opinion and Order – Page 4**

in which Government regulations barred people from misusing weapons to "harm or menace" others. *Rahimi,* 602 U.S. at 701. The Court further held that history, traditions, and "common sense" supported disarming threatening individuals. *Id.* at 698. The Court concluded that 922(g)(8) fit within the well-established tradition of this Nation. *Id.* at 690.

IV.     **Application to Mr. Ferrer**

A.  Section 922(g)(1) Is Constitutional as Applied.

Mr. Ferrer argues that § 922(g)(1)'s possession prong is unconstitutional under the Second Amendment. He contends that although the Fifth Circuit in *Diaz* rejected a facial challenge to § 922(g)(1), he raises the claim to preserve the issue for appellate review. Def.'s Mot. 7. (citing *United States v. Diaz*, 116 F.4th 458, 467 (5th Cir. 2024)).

Defendant contends that the Government cannot meet its burden of showing that his convictions would have been subject to the punishments the Fifth Circuit identified in *Diaz* because his only felony conviction is from March 2012, which was for conspiracy to possess with the intent to distribute a controlled substance. *Id.* at 7. Defendant contends that this offense was not criminal in the founding era and that there is no historical analogue. *Id.* Moreover, Defendant argues that until "roughly 100 years ago, 'there was virtually no effective regulation of narcotics in the United States.'" *Id.* (citing David T. Courtright, *A Century of American Narcotics Policy, in Treating Drug Problems* at 1 (1992)). Mr. Ferrer contends that despite the Founders' knowledge of alcohol and drug addiction, the federal government did not begin criminalizing non-medical drug use until the early twentieth century. *Id.* at 8. He argues that it was not until 1914 that lawmakers criminalized the possession or distribution of opium, and even after the passage of this law, violators were subject to a maximum fine of $2,000 and a maximum five-year sentence. *Id.*

(citing Pub. L. 63-223, 38 Stat. 785, 786, 788-89 (repealed 1970)). The court disagrees with Mr. Ferrer.

The Government argues that Mr. Ferrer's argument fails because this Nation has a history of disarming "(1) those convicted of possessing and trafficking in contraband, (2) dangerous people, and (3) those, like Ferrer, who were serving a criminal sentence." Gov.'s Resp. 2. First, the Government contends that the Court explained in *Bruen* that "if the 'plain text' of the Second Amendment 'covers an individual's conduct,' the government's regulation of that conduct must be 'consistent with this Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen,* 597 U.S. at 17).  The Government argues that the Court in *Rahimi* made it clear that courts that analyze the historical record must apply a principles-based approach. *Id.* at 3 (citing *Rahimi,* 604 U.S. at 961).

Further, the Government argues that Defendant's challenge fails in light of three principles drawn from the regulatory tradition that support § 922(g)(1)'s constitutionality. *Id.* at 6. It contends that, as the Fifth Circuit recognized in *Diaz*, the legislature may disarm those who commit serious crimes. *Id.* Further, the Government argues that legislatures may disarm those who are dangerous, and third, legislatures may disarm those who are on supervised release from a federal conviction. *Id.* It contends that disarming Defendant is consistent with this Nation's history of severely punishing those convicted of trafficking in contraband. *Id.*

The Government further contends that, for example, during the founding era, the knowing receipt of a stolen horse was punishable by death. *Id.* at 7 (citing 6 William Waller Hening, The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619, page 130 (1819) (1748 law) (punishing knowing receipt of stolen horse with death)). Further, it contends that state and federal legislatures punished counterfeiting

**Memorandum Opinion and Order – Page 6**

and forgery of public securities with death or estate forfeiture. *Id.* (citing An Act for the Punishment of Certain Crimes Against the United States, 1 Stat. 112, 112-15 (1790) (making it a felony to forge or counterfeit a public security); 2 Laws of the State of New York Passed at the Sessions of the Legislature (1785-1788) at 664-65 (1886) (1788 law) (punishing counterfeiting with death); 2 Laws of the State of New York Passed at the Sessions of the Legislature (1785-1788) at 260-61 (1886) (1786 law) (punishing counterfeiting bills of credit with estate forfeiture); 9 William Waller Hening, Statutes at Large; Being a Collection of All the Laws of Virginia, from the First Session of the Legislature 302 (1821) (1777 law) (imposing estate forfeiture on anyone convicted of forging, counterfeiting, or knowingly presenting for payment a wide range of forged documents)).

The Government argues that these laws establish a tradition of severely punishing people convicted of crimes involving the creation, possession, or distribution of illicit goods. Because of this, the Government contends that punishing Defendant with disarmament for trafficking in illicit goods fits within this tradition. *Id.* at 7-8. Moreover, the Government argues that several district courts in this circuit have adopted its analogy "between serious convictions for possessing drugs and Founding-era convictions for possessing and trafficking in other types of contraband." *Id.* at 8 (citing *United States v. Landrum*, No. 3:24-CR-63-DPJ-LGI, 2024 WL 4806486, at *1 (S.D. Miss. Nov. 15, 2024); *see also United States v. Garner*, Criminal Action No. 5:24-112, 2024 WL 4820794, at *3 (W.D. La. Nov. 18, 2024) (concluding that the defendant's prior felony conviction for marijuana supported his disarmament); and *United States v. Robinson*, Criminal Action No. 22-253, 2024 WL 4827375, at *7 (E.D. La. Nov. 19, 2024)).

Additionally, the Government contends that disarming Mr. Ferrer is consistent with its "ability to disarm dangerous felons." *Id.* at 9. The Government argues that Defendant is a

dangerous person because his previous conviction resulted from his entering a warehouse and robbing two individuals at gunpoint. *Id.* (quoting *Ferrer*, No. 4:11-CR-096-7, Doc. No. 459 at 3 (quotation marks omitted)). The Government argues that robbery and drug-trafficking crimes pose a significant threat of danger to the general public. *Id.* (citing *United States v. Williams*, 113 F.4th 637, 659 (6th Cir. 2024); *Folajtar v. Att'y Gen.*, 980 F.3d 897, 922 (3d Cir. 2020); *United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011); *United States v. Garcia*, 797 F.3d 320, 321 (5th Cir. 2015)). Further, it contends that "[d]rug traffickers are apt to use firearms 'to protect drug stockpiles, to preempt encroachment into a dealer's 'territory' by rival dealers, and for retaliation.'" *Id.* at 10 (quoting *United States v. Luciano*, 329 F.3d 1, 6 (1st Cir. 2003); and *Smith v. United States*, 508 U.S. 223, 240 (1993) ("[D]rugs and guns are a dangerous combination.")); *see also United States v. Martinez,* 808 F.2d 1050, 1057 (5th Cir. 1987) ("[F]irearms are 'tools of the trade' of those engaged in illegal drug activities."); *United States v. Cooper*, 979 F.3d 1084, 1090 (5th Cir. 2020) (citation and quotation marks omitted). As a result of Defendant's history, the Government contends that it may lawfully disarm him. *Id.*

Finally, the Government argues that Defendant's as-applied challenge fails because "'the government may disarm those who continue to serve sentences for felony convictions.'" *Id.* (quoting *United States v. Giglio*, 126 F.4th 1039, 1044 (5th Cir. 2025)). Because Defendant was on federal supervised release, the Government argues it can lawfully disarm him while he was subject to his ongoing criminal sentence. *Id.* at 10-11 (quoting *Giglio*, 126 F.4th at 104) (quotation marks omitted).

Applying the *Bruen* two-step framework, the court must examine the plain text of the statute, which the Court and Fifth Circuit have held that the Second Amendment covers the conduct prohibited by § 922(g)(1). *Diaz*, 116 F.4th at 467 (citation omitted). Next, the court must

determine whether the Government has met its burden of demonstrating that § 922(g)(1), as applied to Mr. Ferrer, has a historical analogue. *Bruen,* 597 U.S. at 30. The evidence need not be a "historical twin." It does, however, need to be "relevantly similar" to the challenged law. *Id.* The Government contends that historical laws support disarming three types of individuals: "(1) those convicted of possessing and trafficking in contraband, (2) dangerous people, and (3) those, like Ferrer, who were serving a criminal sentence." Gov.'s Resp. 2.

Because modern circumstances differ from history, the court must balance the two and determine not only whether the history is similar but also must determine why and how the prohibition burdens the Second Amendment right. *Rahimi,* 602 U.S. at 698. As the Government correctly explains, the "why" of these laws was to protect society, punish offenders, and deter repeat offenders. *See* Gov.'s Resp. 8. The precursor to § 922(g)(1) was the 1968 Gun Control Act, which was enacted to "bar possession of a firearm from persons whose prior behaviors have established their violent tendencies." 114 Cong. Rec. 14773 (daily ed. May 23, 1968) (statement of Sen. Russell Long of Louisiana). Similarly, the justification for § 922(g)(1) is to deter violent individuals from possessing a firearm and ensure law and order. The "how" or the vehicle in which the lawmakers achieved their historical objectives was by permanently punishing offenders. As the Government shows, individuals who were convicted of crimes involving the creation, possession, or distribution of illicit goods could be punished by death or forfeit their property. Gov.'s Resp. 7. Disarmament of felons, as used in § 922(g)(1), is a much lower punishment than death. Permanent disarmament under § 922(g)(1) does not punish individuals "to an extent beyond what was done at the founding." *Rahimi,* 602 U.S. at 692. These historical analogues support the permanent disarmament of Mr. Ferrer.

**Memorandum Opinion and Order – Page 9**

"For the purposes of assessing [Mr. Ferrer's] predicate offenses under § 922(g)(1), [the court] may consider prior convictions that are 'punishable by imprisonment for a term exceeding one year.'" *Diaz*, 116 F.4th at 467 (citing § 922(g)(1)). While Defendant has only one conviction for which he was imprisoned for more than one year, the court looks at his history as a whole to determine whether he is a threat to the greater public. Mr. Ferrer has a lengthy history of endangering the public. *See United States v. Ferrer*, No. 3:24-CR-171-L, Doc. 958-1 at 35. In 2004, he received 12 months deferred adjudication for "Unlawfully Carrying a Weapon," a class A misdemeanor. *Id.* Officers in the Dallas Police Department stopped Defendant's car because it matched the description of an automobile in which an individual was firing a firearm randomly in the air. *Id.* In 2006, Mr. Ferrer was convicted of "Assault," a class A misdemeanor. *Id.* at 36. Defendant was initially charged with "Aggravated Assault with a Deadly Weapon," but he pleaded guilty to the lower assault charge. *Id.* Mr. Ferrer's history demonstrates his violent past. The court is convinced that Mr. Ferrer's record demonstrates that he represents a "credible threat to the physical safety of another," and § 922(g)(1) is not unconstitutional as applied to him. *Rahimi*, 602 U.S. at 693.

B. <u>Section 922(g)(1) Is Constitutional on Its Face.</u>

Second, to "preserve the foreclosed claim for further review," Defendant argues that § 922(g)(1) is not facially constitutional. Def.'s Mot. 8. He argues that § 922(g)(1) is "inconsistent with the Founding Era approach to the effect of criminal convictions upon an ex-offender's rights." *Id.* at 9. Defendant contends that there is no historical evidence to show that the Government could constitutionally disarm an ex-offender on the basis of his or her prior conviction. *Id.* Further, Mr. Ferrer argues that § 922(g)(1) prohibits him, as a member of "the people," which the Second Amendment protects, from possessing a firearm. *Id.* at 10. Further, he

argues that since § 922(g)(1) "facially prohibits" conduct that the Second Amendment is intended to protect, § 922(g)(1) is facially unconstitutional. *Id.* Defendant contends that no application of § 922(g)(1) can comply with the Second Amendment because there is no historical analogue. *Id.* at 11. Finally, Defendant argues that while the Fifth Circuit has rejected this claim, he persists here to preserve the claim for review by the Fifth Circuit *en banc* or the Supreme Court. *Id.*

To prevail, "the Government need only demonstrate that [§ 922(g)(1)] is constitutional in some of its applications." *Rahimi,* 602 U.S. at 693. The Fifth Circuit has foreclosed facial challenges to § 922(g)(1) constitutional challenges. *See Diaz*, 116 F.4th at 467. Additionally, Defendant fails to show that "no set of circumstances" exists in which this law can be applied without violating the Second Amendment. *Bucklew v. Precythe,* 587 U.S. 119 (2019). The Government need not justify its reasoning with historical analysis because, as explained earlier, the statute is constitutional as applied to Mr. Ferrer.

C. <u>This Court Is Bound by Circuit Precedent.</u>

Even if the court were inclined to deviate from precedent, which it *does not* do, *Bruen* has done little to change the outcome of a § 922(g)(1) claim. Nothing in the Court's recent cases has unequivocally overruled its decision in *Heller,* which permits restrictions on firearm use for felons or mentally deficient persons. *See United States v. Petras,* 879 F.3d 155, 164 (5th Cir. 2018) (the Fifth Circuit held that the Court's decision "must unequivocally overrule prior precedent . . . .").

Further, Mr. Ferrer's challenge is foreclosed by the Fifth Circuit precedent. In *Diaz,* for the first time since *Bruen,* the Fifth Circuit applied the historical inquiry as required by *Bruen* in analyzing the constitutionality of § 922(g)(1). *Diaz,* 116 F.4th at 467. The panel presented the dispositive question of whether "the Nation has a longstanding tradition of disarming someone with a criminal history analogous to" Diaz. *Id.* It held that §922(g)(1) is constitutional as applied

when the punishment for the crime in question has a historical analogue. *Id.* The panel held that permanently disarming Diaz fit within the tradition of regulating firearms. *Id.* at 472. Similarly, Mr. Ferrer's applied challenge fails because, as stated earlier, permanent disarmament for the crimes he committed is supported by historical analogues, and thus, his challenge is foreclosed. For the reasons stated, Mr. Ferrer's arguments fail because this court is bound by precedent.

    D. <u>Defendant's Commerce Clause Challenge Is Foreclosed.</u>

Mr. Ferrer's Commerce Clause arguments are foreclosed (Doc. 22). The Fifth Circuit has consistently rejected Commerce Clause arguments. *See*, e.g., *United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013); *United States v. Nichols*, 2022 WL 5401942, at *1 (5th Cir. Oct. 6, 2022) (per curiam), *cert. denied*, 143 S. Ct. 827 (2023).

Mr. Ferrer's argument fails, and his Motion is therefore **denied.**

    V.    Conclusion

Because the text and history support the disarmament of felons, the court **concludes** that 18 U.S.C. § 922(g)(1) is constitutional both as applied to Mr. Ferrer and on its face. Further, the court **concludes** that Mr. Ferrer's Commerce Clause challenge is foreclosed by precedent. Accordingly, the court **denies** Defendant's Motion (Doc. 22), and it will proceed with the disposition of Count One by way of a plea or trial.

**It is so ordered** this 4th day of June, 2025.

                                      Sam A. Lindsay
                                      United States District Judge